Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 2394 | DATE | 10/17/2001 |
| CASE TITLE | Marinich vs. Peoples Gas Light, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Peoples Gas's motion for summary judgment is granted (#33). Motions #42, #53 and #57 are denied. All pending motions are declared moot. Therefore, judgment is entered in favor of defendant and against plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | 10-22-01 date docketed | | 64 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JD | courtroom deputy's initials | 01 OCT 19 PM 1:49 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEANETTE MARINICH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98 C 2394 |
| v. | ) | |
| | ) | |
| PEOPLES GAS LIGHT AND COKE COMPANY, an Illinois corporation, | ) ) ) | Judge George M. Marovich |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeanette Marinich ("Marinich") filed this action against Defendant Peoples Gas Light and Coke Company ("Peoples Gas") alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(b). Peoples Gas now moves for summary judgment. For the reasons set forth below, Peoples Gas's motion is granted.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. Marinich is a 50-year-old Caucasian who was employed by Peoples Gas in a variety of positions from April of 1968 until July of 1997. Marinich alleges her troubles at Peoples Gas began in the Spring of 1997 when Peoples Gas hired an African-American, Desiree Rogers ("Rogers"), as the Vice President of Corporate

1

64

Communications. At that time, Marinich held the position of Administrator of Consumer Information in the Market Planning Department. She was supervised by Gene Waas, Manager of Marketing Services and on certain projects, Thomas O'Sullivan ("O'Sullivan"), Vice President of Marketing and Business Development. Her main duties in that role were to manage all forms of advertising for Peoples Gas and its subsidiaries.

On May 5, 1997, both Marinich and Rogers attended an American Gas Association conference in New Orleans. During a roundtable discussion, Marinich described herself as being in charge of all Peoples Gas advertising, including brand advertising and third-party advertising. Rogers confronted Marinich after the discussion and told her to cease any brand advertising work because Rogers herself would be taking over those responsibilities. O'Sullivan had previously told Marinich that she would take on the responsibilities of the new brand advertising initiative. Marinich responded by stating that she would have to verify that with O'Sullivan. Rogers again, with her finger held in Marinich's face, told Marinich to stop doing any brand advertising work because it needed "young blood with fresh ideas." Plts. 56.1(b) ¶51. Marinich reiterated her intention to confer with O'Sullivan. Rogers walked away agitated stating that Marinich needed to lose her "privileged WASP attitude." Id.

Marinich reported the incident to O'Sullivan via phone and subsequently in a face-to-face meeting. During both conversations Marinich inquired whether Rogers was going to be in charge of advertising for Peoples Gas and expressed her belief that she would be unable to work for Rogers. In each conversation, O'Sullivan explained to Marinich that he did not know whether Rogers would be in charge of advertising. When Marinich had not received an answer from O'Sullivan by June 4, she called again inquiring about whether Rogers would be in charge of brand advertising. O'Sullivan told Marinich he would get back to her. On June 12, 1997, O'Sullivan informed Marinich that the Consumer Information group was being transferred to Rogers's department. Marinich told O'Sullivan that she could not work for Rogers and requested a transfer and a meeting with Thomas Patrick ("Patrick"), the Executive Vice President. O'Sullivan told her that he would talk to her when he returned from a business trip.

Feeling that she was not getting the results she desired from O'Sullivan, Marinich had a meeting with Barbara Benchik ("Benchik"), Manager of the Affirmative Action and Employment Policies Division. Marinich told Benchik about the New Orleans conference incident and also about complaints about Rogers she had heard from other employees working for Rogers. She again requested a transfer and mentioned stories she heard about a few men who had been transferred to another company, Peoples Energy

Services Corporation, who were given transfers back to Peoples Gas because they were unhappy with their new supervisor. After their meeting Benchik informed John Ibach, Vice President of Human Resources, of Marinich's complaints about Rogers. Ibach then spoke to Rogers. Rogers told Ibach that she had confronted Marinich at the conference because "she was shocked to hear someone reporting the plans of the company that she felt shouldn't necessarily be made public." Plts. 56.1(b) ¶69. Rogers claimed she let Marinich know "that this was not appropriate to be discussed," and that Marinich should "not make any further reports on this program going forward." Id. Benchik also met with Rogers regarding Marinich's complaint. Benchik then met with O'Sullivan to obtain some "background" information about Marinich.

On June 24, 1997, and pursuant to her request, Marinich met with Patrick and Benchik. Marinich related the details of her incident with Rogers and requested a transfer. She further suggested that the company create a liaison position between the Marketing and the Corporate Communications area. Benchik told Marinich that such a position was not going to be created. Finally, Marinich requested a leave of absence until she was eligible for full retirement benefits. This request was also rejected by Benchik. Patrick and Benchik informed Marinich that the possibility of an alternative position for her would be investigated. They also told her she would be apprised of the

results of their investigation into the complaint regarding Rogers. Marinich asserts that Patrick and Benchik, despite what they had told her, failed to communicate to her the results of the investigation.

On June 25, 1997, Rogers made a point of following Marinich onto an elevator, stepping directly in her face and sarcastically saying "good morning" to Marinich. For the duration of the elevator ride, Rogers stared at Marinich. On June 30, 1997, Marinich, Patrick and Benchik again met. This time, Marinich informed them of the incident with Rogers that occurred in the elevator. Patrick informed Marinich at that meeting that there were no alternative positions for her at Peoples Gas nor would the "liaison" position suggested by Marinich be created. Thus, he explained, her only option would be to work for Rogers for at least one year. Marinich again requested a leave of absence and Patrick explained that such a leave would be impossible. Marinich inquired about her title and position under Rogers. Patrick reassured her that her position would be the same as her current position. Further, Patrick explained that no reorganization of the Advertising Department was planned after the transfer.

On July 1, 1997, Marinich's department was transferred to Rogers's supervision. Marinich failed to report to work. As a result of her failure to report to work, Peoples Gas terminated Marinich.

5

## DISCUSSION

I. <u>Standards for Summary Judgment</u>

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c). The moving party has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Only genuine disputes over "material facts" can prevent a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). To overcome a plaintiff's motion, the defendant cannot rest on the pleadings but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue of fact. <u>See</u> Fed. R. Civ. P. 56(e). While the record "and all reasonable inferences drawn from it [are to be viewed] in the light most favorable to the party opposing the motion," <u>Bisciglia v. Kenosha Unified Sch. Dist. No. 1</u>, 45 F.3d 223, 226 (7th Cir. 1995), the non-movant must show more than "some metaphysical doubt" regarding the facts. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

II. <u>Discriminatory Employment Practices</u>

Marinich asserts that Peoples Gas discharged her due to her race and sex in violation of Title VII and due to her age in violation of the ADEA. Under Title VII, it is unlawful for an

6

employer to discharge any individual or to otherwise discriminate against any individual, on the basis of race or sex, with respect to her compensation, terms, conditions, or privileges of employment. See 42 U.S.C. § 2000e2(a)(1). Likewise, the ADEA prohibits an employer from similarly discriminating against individuals who are 40 or more years of age. 29 U.S.C. §§ 621(b), 631(a). Since both Title VII and ADEA discrimination claims are analyzed in the same manner, see Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1162 (7th Cir. 1994)(citations omitted), and since the evidence offered to support both of these claims is essentially the same, the Court will address them together.

There are two methods of proof for demonstrating alleged discrimination: (1) direct proof of discriminatory intent; or (2) indirect proof, or the burden-shifting method described in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973). See Oates v. Discovery Zone, 116 F.3d 1161, 1169-70 (7th Cir. 1997). Here, Marinich attempts to prove discrimination through both the direct and the indirect burden-shifting method.

A. Direct Proof

The Seventh Circuit described direct evidence as follows:

> [D]irect evidence of discrimination [is] evidence which in and of itself suggests that someone with managerial authority was animated by an illegal employment

7

criterion. Even isolated comments may
constitute direct evidence of discrimination
if they are contemporaneous with the
discharge or causally related to the
discharge decision making process. Direct
evidence typically relates to the motivation
of the decisionmaker responsible for the
contested decision.

Sheehan v. Donlen Corp., 173 F.3d 1039, 1999 WL 179015, at *3 (7th Cir. March 18, 1999)(citations and quotations omitted)

Marinich describes one asserted instance of direct evidence that her termination was discriminatory on the basis of race and age.[1] That instance occurred when Rogers confronted her at a New Orleans conference and told her she was to stop working on brand advertising because it needed "young blood with fresh ideas" and

---

[1] Marinich alleges that the termination was not the sole adverse employment action. However, the other actions of which she complains: being told to stop working on brand advertising and subsequently having brand advertising responsibilities taken away from her, do not constitute adverse employment actions. Crady v. Liberty National Bank and Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993)("a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience on an alteration of job responsibilities.") Marinich has not shown that her remaining job responsibilities were less significant than the advertising responsibility or that removing the advertising responsibility significantly diminished her overall responsibilities. This is particularly true since brand advertising was a new initiative for which Marinich had never previously been responsible. Thus, the Court is convinced that her termination was the sole adverse employment action she experienced.

8

that she needed to lose her "privileged WASP attitude." Marinich argues that this encounter in conjunction with: 1) the subsequent removal of her advertising responsibilities, her transfer and her firing; 2) stories she heard of Rogers's discriminatory behavior from other employees; and 3) preferable treatment given to other male employees, constitutes direct evidence to sustain her race, age and sex discrimination claims.

The Court finds this evidence insufficient to defeat summary judgment. First, Rogers's comments do not rise to level of direct evidence of discrimination because Rogers was not the decision-maker. "[S]tatements by non-decision-makers, or decision makers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden [of creating a prima facie discrimination claim]." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989). There are simply no facts in the record which support the contention that Rogers made the decision to fire Marinich or that she was in any way involved in the decision to fire Marinich. Rather, the record reveals that the only people involved in the decision to fire Marinich were Patrick, Benchik and Ibach.

Next, Marinich attempts to use anecdotes of other employees regarding Rogers discriminatory behavior to bootstrap her claims of discrimination. Again, Rogers was not the decision-maker in Marinich's firing and, thus, anecdotal evidence regarding her past discriminatory behavior is irrelevant to prove that the

9

decision to fire Marinich by three other individuals (all of whom were Caucasian, all of whom were older than Marinich and one of whom was female) was discriminatory.

Finally, in support of her sex discrimination claim Marinich asserts that similarly situated men were treated more favorably than she. When the situations are compared, however, these men simply were not similarly situated to Marinich. The male employees, who worked in a different department than Marinich, accepted voluntary transfers to another company Peoples Energy Service Coporation ("PESC") with the understanding that, if they would accept the transfer to PESC, they would always have a job at Peoples Gas if they chose to return. They worked at PESC and eventually when they became dissatisfied, they were transferred back to Peoples Gas. Marinich was not so situated. Marinich was not asked to transfer to a different company, rather she, with others in her department were transferred within Peoples Gas. She then refused to show up for work once the transfer took affect. Clearly the allegedly better treated men, were not similarly situated to Marinich. Thus, there is not enough direct evidence of discrimination to support Marinich's race, sex or age discrimination claims.

B. <u>Burden Shifting Analysis</u>

Having failed to find direct evidence to support Marinich's discrimination claims, the Court turns to her arguments regarding indirect evidence. The mechanics of proving discrimination

10

pursuant to the indirect burden-shifting analysis are well-settled:

> If the plaintiff establishes a prima facie case, there is a rebuttable presumption of discrimination and the employer must offer a legitimate, nondiscriminatory or non-retaliatory reasons for the adverse employment action. If the employer gives a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must prove this reason is mere pretext for discrimination.

Payne v. Milwaukee County, 146 F.3d 430, 433 (7th Cir. 1998).

Courts need not, however, labor through the entire burden-shifting exercise in every case. Instead, "[w]hen the defendant has proffered an explanation for termination that the court determines to be non-pretextual, the court may avoid deciding whether the plaintiff has met his prima facie case and instead decide to dismiss the claim because there is no showing of pretext." Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998). The Court finds that this is such a case and, therefore, will turn directly to the pretext analysis.

11

Here, Peoples Gas asserts that the reason it terminated Marinich was because she failed to show up for work once she had been transferred to Rogers's supervision. Marinich does not dispute the fact that she stopped showing up to work once her group was transferred to Rogers's department. This reason easily carries Peoples Gas's "burden of producing 'evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" Sample v. Aldi, Inc., 61 F.3d 544, 547 (7th Cir. 1995)(quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993)).

Because Peoples Gas has offered a legitimate, nondiscriminatory reason for terminating Marinich, the burden shifts to Marinich to present evidence that the reason offered by Peoples Gas was pretextual. See Perdomo v. Browner, 67 F.3d 140, 144-45 (7th Cir. 1995)(defining pretext as "a lie, specifically a phony reason for some action"). Importantly, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Hicks, 509 U.S. at 515; see also McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 797 (7th Cir. 1997)("Once an employer makes this showing [of legitimate, non-discriminatory reason for the adverse employment action], the burden then shifts back to the employee to show that the employer's proffered reasons are pretextual and that its actual reason was discriminatory or retaliatory.").

Here, stated directly, there is not one speck of evidence, even circumstantial, that race, sex or age discrimination was the real reason Marinich was terminated. Rather, Marinich relies on alleged inconsistencies in Peoples Gas's testimony to raise suspicion regarding whether the Court should accept their testimony regarding why she was terminated. Marinich relies on a statement made by this Court in a prior discrimination case: "An employer's proffered reasons are pretextual if the employer's testimony contains such inconsistencies as to call into question the employer's overall veracity." Woods-Walker v. Harrah's Illinois Corp., No. 97 C 8560, 2000 WL 135842, at *6 (Jan. 28, 2000 N.D. Ill.)(citing Castleman v. Acme Boot Co., 959 F.2d 1417, 1422 (7th Cir. 1992)). Marinich raises one instance of alleged testimonial inconsistency which she claims demonstrates that Peoples Gas's proffered reason for terminating her was pretextual. Specifically, Marinich claims that the testimony of various employees of Peoples Gas demonstrates that Peoples Gas "cannot even decide who actually made the decision to terminate Marinich." Plts. Resp. at 15. Marinich asserts that three Peoples Gas employees (Patrick, Benchik and Ibach) each claim that they, alone or in concert with another employee, were responsible for the decision to terminate Marinich. Unfortunately, Marinich provides no citation to the record to support such claims. While the Court does not bear the responsibility for scouring the record for evidence to support a

plaintiff's claims, Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir 1994), the Court has reviewed the deposition testimony and affidavits of these three employees and finds that Marinich's characterization of their testimony is erroneous. Patrick stated he "authorized Benchik to terminate Ms. Marinich's employment with Peoples Gas if she refused to show up to work on July 1, 1997." Patrick Aff. ¶13. Benchik testified that when Marinich failed to show for work, she consulted with Ibach, they in turn consulted outside counsel, and together they decided that a letter needed to be sent to Marinich putting her on notice that if she did not report the next day she would be terminated. This testimony is not the type of inconsistent testimony which would cloud Peoples Gas's veracity enough to establish pretext.

C. Retaliation

Under the retaliation provision of Title VII, it is unlawful for "a labor organization to discriminate against any member thereof . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing under this subchapter." 42 U.S.C. § 2003e3. A plaintiff may raise an issue of fact supporting discriminatory retaliation with either direct evidence or by creating an inference of discrimination using the indirect burden-shifting method. McDonnell Douglas Corp., 411 U.S. 792; see Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1308 (7th Cir. 1997).

Marinich employs the burden-shifting method to establish her retaliation claim. Marinich relies on the same evidence as she relied on for her discrimination claim to support her claim that her firing was the result of her complaints regarding Rogers's allegedly discriminatory behavior. However, as discussed above, Marinich has failed to establish that her firing was pretextual. See supra II.B. Thus, Marinich's retaliation claim, like her discrimination claims, cannot survive.

## CONCLUSION

For the foregoing reasons, Peoples Gas's motion for summary judgment is granted.[2]

ENTER:

_____
GEORGE M. MAROVICH
UNITED STATES DISTRICT JUDGE

DATED: October 17, 2001

---

[2] Marinich has filed a Motion to Strike Portions of Defendant's Rule 56.1(a) Statement and Supporting Materials and a Motion to Strike Portions of Defendant's Response to Plaintiff's Statement of Additional Facts and Supporting Materials. However, because the Court did not rely on any of those "portions" in reaching its decision, Marinich's motion is denied as moot. Peoples Gas has filed a Motion to Strike Plaintiff's Responsive Materials, this motion is also denied as moot.